Jeffrey R. **WEIKEL**, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (PECO),** Respondent.

**Peco Energy, Petitioner,**

v.

Workers' Compensation Appeal Board (Weikel), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 19, 2003.
Decided Jan. 21, 2004.

Thomas R. Beveridge, Bechtelsville, for petitioner.

Robert W. Elias, King of Prussia, for respondent.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge PELLEGRINI.

Jeffrey R. Weikel (Claimant) petitions for review of a Workers' Compensation Appeal Board (Board) order affirming the decision of the Workers' Compensation Judge (WCJ) finding that Claimant's "flex dollars" did not constitute wages within the meaning of Section 309 of the Workers' Compensation Act (Act).[1] Peco Energy (Employer) cross-appeals challenging the Board's decision allowing Claimant's appeal *nunc pro tunc*.

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582. Section 309(e) provides, in relevant part:

The terms "average weekly wage" and "total wages," as used in this section, ... [shall not] include fringe benefits, including, but not limited to, employer payments for or contributions to a retirement, pension, health and welfare, life insurance, social security or any other plan for the benefit of the employe or his dependents.
77 P.S. § 582(e).

On October 22, 1996, Claimant sustained an injury to his right wrist while in the course of his employment with Employer. Employer issued a Notice of Compensation Payable (NCP) listing Claimant's injury as a right wrist fracture and paid temporary total disability benefits at the rate of $512.13 per week based on an average weekly wage of $768.20.[2] On August 14, 2000, Claimant filed a penalty petition alleging that Employer had been paying him benefits at the rate of $509.93 per week rather than the $512.13 per week as set forth in the NCP.[3] Claimant alleged that the average weekly wage was not calculated properly because Employer had failed to include "flex dollars" which were provided for the selection of healthcare and other benefits in the calculation. Employer filed a petition to review compensation benefits alleging that the NCP should be amended to reflect an average weekly wage of $764.80, with a corresponding weekly benefit of $509.86.

At the November 20, 2001 hearing, the parties submitted a stipulation of facts agreeing that the NCP should be amended to reflect a reduced average weekly wage of $756.05, with a weekly benefit of $504.03.[4] However, the issue of whether Claimant's flex dollars should be included in the calculation was left for the WCJ to decide.

Before the WCJ, Employer presented the testimony of its payroll manager, Michael Luderitz (Luderitz). Luderitz testified that Employer's flex dollar program was designed to provide employees with a dollar amount from which they could choose from a menu of benefits including medical, dental, group life insurance, accidental death and dismemberment, and short and long-term disability. Luderitz explained that if the cost of the benefits selected exceeded the amount of the flex dollars, the employee paid the difference. If the cost of the chosen benefits was less than the flex dollar allowance, the excess was paid over to the employee over the course of the year as part of his gross wages. Luderitz stated that Claimant allocated all of his flex dollars for medical and dental benefits and did not take any flex dollars as cash.[5]

The WCJ issued a decision on March 27, 2000, wherein he found Luderitz's testimony credible regarding the flex dollar program. The WCJ also found that Claimant

2. By a WCJ's decision circulated on July 21, 1999, the NCP was amended to include an aggravation of a pre-existing scaphoid nonunion of the left wrist in the description of the injury.

3. On January 25, 2000, Claimant also filed a petition to review medical treatment alleging that the description of the injury in the NCP should be further expanded to include Complex Regional Pain Syndrome (CRPS) or Reflex Sympathetic Dystrophy (RSD) Type 2 of both arms. Claimant later amended the petition to also include a psychological injury.

4. The stipulation of facts also stated that Employer agreed Claimant suffered from CRPS Type 2 of the right arm and from an adjustment disorder with depressed mood as a result of the work injury. In addition, Employer waived its right to assert a credit for any overpayments made as a result of the incorrect average weekly wage, and Claimant withdrew his penalty petition. The issue of whether Claimant suffered from CRPS Type 2 of the left arm remained an issue before the WCJ.

5. Luderitz's testimony was supported by payroll records. Specifically, Claimant's enrollment book showed that for 1996, he chose medical and dental benefits which had a total cost in excess of his total flexible dollars resulting in a deduction of $37.81 from his weekly paycheck. This deduction was confirmed by his paychecks which showed an actual deduction of $37.85 from the October 2, 1995 through December 19, 1995 paychecks and a deduction of $37.80 from the paychecks beginning December 26, 1995.

had no flex dollars which would constitute wages for the purpose of calculating his pre-injury average weekly wage. The WCJ concluded that Claimant failed to prove that his flex dollars constituted wages within the meaning of Section 309 of the Act.[6]

Claimant filed an appeal to the Board on July 23, 2002, almost four months after the WCJ's decision was issued. Employer filed a motion to quash the appeal as untimely. The Board issued a decision finding that Claimant presented an adequate excuse for the late filing and allowed the case to proceed *nunc pro tunc*.[7] The Board, however, affirmed the WCJ and found that the flex dollars were not to be included in the calculation of the average weekly wage under Section 309 of the Act. Claimant appealed the Board's finding as to the flex dollars to this Court. Employer cross-appealed challenging the Board's finding that Claimant's appeal could proceed *nunc pro tunc*.[8]

Because whether the Board properly allowed Claimant's appeal to proceed *nunc pro tunc* is a threshold issue going to the Board's jurisdiction, *Sellers v. Workmen's Compensation Appeal Board (HMT Construction Services)*, 687 A.2d 413 (Pa.Cmwlth.1996), *affirmed by*, 552 Pa. 22, 713 A.2d 87 (1998), we will first address Employer's contention that the appeal was untimely filed.[9] Section 423 of the Act, 77 P.S. § 853, requires that an appeal must be filed within 20 days after a WCJ's decision. However, in certain instances, a late appeal will be allowed. *See, e.g.,* Bass (because the late filing was non-negligent, Supreme Court allowed a *nunc pro tunc* appeal where secretary who was to file the appeal became ill and appeal was not filed until her return to work after the filing deadline); *Tony Grande, Incorporated v. Workmen's Compensation Appeal Board (Rodriguez)*, 71 Pa.Cmwlth. 566, 455 A.2d 299 (1983) (*nunc pro tunc* appeal allowed where the unpredicted hospitalization of appellant's attorney prevented timely filing). Because Claimant's attorney's excuse for the late filing of his appeal (*see* fn. 7) is similar to the factual situation in *Bass*, and the attorney immediately filed the appeal papers upon discovering the error, the Board did not err in finding that the late filing was due to the non-negligent conduct of the attorney's staff and allowing the appeal to proceed *nunc pro tunc*.

In his appeal, Claimant contends that his "flex dollars" were wages within

---

6. The WCJ also granted Claimant's petition to review medical treatment, but neither party appealed that finding.

7. In its decision, the Board specifically found: Review of the record discloses that [the WCJ's] Decision bears a circulation date of March 27, 2002. Claimant's appeal has a postage meter stamp indicating a mailing date of July 23, 2002. The appeal was stamped as received by the [Board] on July 24, 2002, approximately four months after the date of the [WCJ's] Decision.

Claimant explains that the appeal was timely prepared but the clerical person, [who] had responsibility for filing it, became ill and consequently neglected to file the appeal within the statutory twenty days. We believe this excuse is acceptable and will review this case nunc pro tunc. *Bass v. Commonwealth of Pennsylvania,* [485 Pa. 256, 401 A.2d 1133 (1979)].
(Board's July 24, 2003 decision at 2.)

8. In reviewing a determination of the Board, our scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *C. Hannah & Sons Construction v. Workers' Compensation Appeal Board (Days)*, 784 A.2d 860 (Pa.Cmwlth.2001).

9. We note that Employer does not contend that the facts as accepted by the Board are insufficient to decide whether to grant a *nunc pro tunc* appeal.

the meaning of Section 309 of the Act because he could have chosen to not use his flex dollars and, instead, collected the amount as cash. First, Section 309(e) specifically excludes from the average weekly wage "employer payments for or contributions to a retirement, pension, health and welfare." It is undisputed that Claimant used the entire amount of his flex dollars for medical and dental benefits, two types of benefits that clearly fall within the exclusionary language of that section. Second, although Claimant could have opted to "withdraw" his flex dollars as cash, his right to make that decision did not necessitate the addition of his utilized flex dollars in his average weekly wage calculation. Until that "withdraw" occurs, the flex dollars are not added to gross wages—the measurement for calculating the average weekly wage. Moreover, an employee who applies his flex dollars towards benefits not only receives the value of the fringe benefits but is also not taxed on that money. If that same employee was then allowed to also include those same flex dollars in his average weekly wage under Section 309 despite not having paid taxes on them, he would receive a much greater benefit than an employee who had opted to "withdraw" his flex dollars as cash and paid taxes on that amount. Because health and welfare benefits are excluded under Section 309(e) of the Act, the Board did not err in finding that Claimant's flex dollars used towards medical and dental benefits were to be excluded from his average weekly wage.

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this *21st* day of *January,* 2004, the order of the Workers' Compensation Appeal Board, No. A02–2076, dated July 24, 2003, is affirmed.